UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TANIA ALCARAZ,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>　　　　　　Defendant. | Case No. CV 16-4784 JC<br><br>MEMORANDUM OPINION AND ORDER OF REMAND |

## I.　SUMMARY

On June 29, 2016, Tania Alcaraz ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's applications for benefits. The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; July 1, 2016 Case Management Order ¶ 5.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is hereby substituted for Commissioner Carolyn W. Colvin as the defendant in this action.

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On April 5, 2012, plaintiff filed applications for Supplemental Security Income and Disability Insurance Benefits alleging disability beginning on January 9, 2011, due to mild mental retardation and "major depression disorder." (Administrative Record ("AR") 19, 204, 208, 238). The Administrative Law Judge ("ALJ") examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on July 21, 2014. (AR 47-69).

On October 1, 2014, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 19-27). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: depression, and borderline intellectual functioning (AR 21); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 22); (3) plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels, but was "limited to the performance of jobs that require no more than the completion of simple repetitive tasks" (AR 23); (4) plaintiff was capable of performing past relevant work as a grocery bagger or a sweeper/cleaner (AR 25); (5) alternatively, there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically laundry worker, and industrial cleaner (AR 25-26); and (6) plaintiff's statements regarding the intensity, persistence, and limiting effects of subjective symptoms were not entirely credible (AR 23).

On May 3, 2016, the Appeals Council denied plaintiff's application for review. (AR 1).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted). The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is required to use the following five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings")? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform claimant's past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work

1 experience, allow the claimant to adjust to other work that
2 exists in significant numbers in the national economy? If so,
3 the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citations omitted); see also 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (explaining five-step sequential evaluation process).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).

### B.   Standard of Review

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).

While an ALJ's decision need not discuss every piece of evidence or be drafted with "ideal clarity," at a minimum it must explain the ALJ's reasoning with sufficient specificity and clarity to "allow[] for meaningful review." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citations and internal quotation marks omitted); Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) (citation and quotation marks omitted).

An ALJ's decision to deny benefits must be upheld if the evidence could reasonably support either affirming or reversing the decision. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457). Even when an ALJ's decision contains error, it must be affirmed if the error was harmless. Treichler v. Commissioner of Social Security Administration, 775 F.3d 1090, 1099 (9th Cir. 2014). An ALJ's

error is harmless if (1) it was inconsequential to the ultimate nondisability determination; or (2) despite the error, the ALJ's path may reasonably be discerned, even if the ALJ's decision was drafted with less than ideal clarity. Id. (citation and quotation marks omitted).

A reviewing court may not conclude that an error was harmless based on independent findings gleaned from the administrative record. Brown-Hunter, 806 F.3d at 492 (citations omitted). When a reviewing court cannot confidently conclude that an error was harmless, a remand for additional investigation or explanation is generally appropriate. See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (citations omitted).

## IV.  DISCUSSION

Plaintiff contends that the ALJ erred at step three by failing to consider Listing 12.05(C), a listing that plausibly applies to plaintiff's case. (Plaintiff's Motion at 11-13). The Court agrees. As the Court cannot find the ALJ's error harmless, a remand is warranted.

### A.  Pertinent Law

At step three of the sequential evaluation process, a claimant who has an impairment or combination of impairments that meets or medically equals one of the Listings is presumed to be disabled without further inquiry. 20 C.F.R. §§ 404.1520(a)(4)(iii) & (d), 416.920(a)(4)(iii) & (d). An impairment meets a listing if it matches all of the specified medical criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990), superseded by statute on other grounds as stated in Kennedy v. Colvin, 738 F.3d 1172, 1174 (9th Cir. 2013); Tackett, 180 F.3d at 1098. An impairment that manifests only some of the criteria in a listing, no matter how severely, does not qualify. Zebley, 493 U.S. at 530; Tackett, 180 F.3d at 1099. An unlisted impairment or combination of impairments is equivalent to a listed impairment if medical findings are equal in severity to all of the criteria for the
///

most similar listed impairment. <u>Zebley</u>, 493 U.S. at 531; see 20 C.F.R. §§ 404.1526(b), 416.926(b)

Although a claimant bears the burden of proving that she has an impairment or combination of impairments that meets or equals the criteria of a listed impairment, an ALJ's decision must still adequately discuss and evaluate the evidence before concluding that a claimant's impairments fail to meet or equal a listing. <u>Marcia v. Sullivan</u>, 900 F.2d 172, 176 (9th Cir. 1990). Remand is appropriate where an ALJ fails adequately to consider a listing that plausibly applies to a plaintiff's case. See <u>Lewis v. Apfel</u>, 236 F.3d 503, 514 (9th Cir. 2001).

To be considered presumptively disabled under Listing 12.05(C) for "intellectual disability,"[2] a claimant must present evidence of (1) "significantly subaverage general intellectual functioning with deficits in adaptive functioning" that manifested before the age of 22; (2) a "valid verbal, performance, or full scale IQ of 60 through 70"; and (3) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05(C); see <u>Kennedy</u>, 738 F.3d at 1174 (citing <u>id.</u>).

The early onset date of a claimant's qualifying subaverage intellectual functioning may be established with circumstantial evidence (*e.g.*, a claimant's early difficulty with reading and writing, participation in special education classes in high school, limited work history, lack of independence/living under care of parents). <u>Jones v. Colvin</u>, 149 F. Supp. 3d 1251, 1260-61 (D. Or. 2016) (collecting cases); <u>Gomez v. Astrue</u>, 695 F. Supp. 2d 1049, 1061 (C.D. Cal. 2010) (collecting cases).

---

[2]The impairment formerly listed under 12.05 as "mental retardation" has been renamed "intellectual disability," but "[t]he substance of the listing has not changed." <u>Kennedy</u>, 738 F.3d at 1175 n.1.

Where objective psychological testing produces more than one IQ score (*e.g.*, "the Wechsler series"), the lowest score is used in conjunction with Listing 12.05.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(c); Gomez, 695 F. Supp. 2d at 1053 (citing id.).  An ALJ may reject an IQ score as invalid where substantial evidence supports doing so (*e.g.*, the record contains external evidence of "improper testing conditions or a claimant's participation in activities inconsistent with the IQ score").  Jones, 149 F. Supp. 3d at 1258 (citing Thresher v. Astrue, 283 Fed.Appx. 473, 475 & n.6 (9th Cir. 2008)).

An impairment is deemed to impose "an additional and significant work-related limitation of function" for purposes of Listing 12.05(C), at a minimum, if it is found "severe" at step two.  See Fanning v. Bowen, 827 F.2d 631, 633 n.3 (9th Cir. 1987) (citations omitted); Gomez, 695 F. Supp. 2d at 1062 (citing, in part, id.); see also 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05(A) (under Listing 12.05(C), additional impairment "significantly limits [] physical or mental ability to do basic work activities" if it is a "severe" impairment as defined in 20 C.F.R. §§ 404.1520(c) and 416.920(c)).

**B.   Analysis**

Here, a remand is appropriate because the ALJ failed adequately to evaluate whether plaintiff had an impairment which met or medically equaled Listing 12.05(C) – an issue plaintiff had raised at the hearing.  (AR 51-52).

First, the record contains evidence of a valid IQ score for plaintiff within the requisite range (*i.e.*, "60 through 70").  Specifically, in the report of an August 17, 2012 Complete Psychological Evaluation of plaintiff ("2012 Report") Dr. Rosa Colonna, a state agency examining psychologist, noted that on psychological testing with the Wechsler Adult Intelligence Scale-IV ("WAIS-IV") plaintiff had scores for "verbal comprehension" of 74, "perceptual reasoning" of 67, and "full

///
///

scale IQ" of 70.[3] (AR 342). The ALJ mentioned plaintiff's "full-scale IQ score of 70" but did not find (nor does external evidence in the record plausibly reflect) that any of plaintiff's WAIS-IV scores were invalid. (AR 24). In fact, Dr. Colonna expressly found "[t]he test results are valid." (AR 342). Nor did the ALJ sufficiently explain his implicit rejection of Dr. Colonna's scores that plausibly met the listing. See Marcia, 900 F.2d at 176 (ALJ must adequately discuss and evaluate evidence before concluding that impairments fail to meet or equal listing); Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ "must explain why 'significant probative evidence has been rejected.'") (citation omitted).

Second, there is circumstantial evidence that plaintiff's pertinent mental deficiency began before plaintiff reached the age of 22. For example, at the hearing plaintiff testified that she attended "special ed" classes while in high school. (AR 54-55). There is also documentary evidence that plaintiff had been part of a "Special Day Program" in high school and had been "eligible for special education services as a student with a Specific Learning Disability." (AR 330, 332). In addition, there is evidence that plaintiff received services from the North Los Angeles Regional Center for Developmentally Disabled Persons ("Regional Center"), possibly as early as high school. (See AR 59 [testimony from plaintiff that she had been a client of the Regional Center since before high school]; AR 332-34 [February 8, 2008 report of medical evaluation noting plaintiff was "undergoing eligibility determination for Regional Center services"]). The record

---

[3]Although the Listings in effect at the time of the ALJ's decision used terminology from the Wechsler Adult Intelligence Scale III ("WAIS-III") test, courts have found scores under the WAIS-IV "verbal comprehension" and "perceptual reasoning" indexes to be the "functional equivalent" of the "verbal" and "performance" IQ scores under the WAIS-III indexes referenced in 12.05(C). See Fatheree v. Colvin, 2015 WL 1201669, *10 (E.D. Cal. Mar. 16, 2015) (citing cases). Even assuming, for the sake of argument, that such scores were not functionally equivalent, the record here still contains a valid "full scale IQ" for plaintiff which fell within the range that satisfies Listing 12.05(C).

also reflects that plaintiff had lived with, and been supported by, her parents (AR 59, 377-81, 384), and that plaintiff never applied for a driver's license because she did not know how to drive (AR 55).  Such evidence alone reasonably supports an inference that plaintiff's mental deficiency manifested before age 22, as Listing 12.05(C) requires.  See, e.g., Jones, 149 F. Supp. 3d at 1260-61 (noting record contained circumstantial evidence of claimant's early deficits in adaptive functioning including evidence that claimant, among other things, "attended special education classes," "took numerous tries to pass her driver's license test," and "live[d] under the care of her parents"); cf., e.g., Bailey v. Apfel, 230 F.3d 1063, 1065 (8th Cir. 2000) (ALJ erred in rejecting IQ of claimant who, in part, "had taken special education classes in school," "never lived independently," had "daily activities [that] were restricted to watching television and visiting with friends," and "had trouble keeping jobs").

The medical opinion evidence also plausibly supports finding early onset of plaintiff's mental deficiency.  For example, in the report of a Psychological Assessment dated February 8, 2008 (*i.e.*, from when plaintiff was 21 years old), Dr. John Lamont, a licensed psychologist, diagnosed plaintiff with mild "mental retardation," noted that plaintiff had "a valid Full Scale IQ in the mildly deficient range, together with deficient adaptive functioning in two of three areas, including communication and daily living skills[,]" and opined that the evidence did not suggest that plaintiff was any less impaired than she had been at the age of 18. (AR 337, 392).  The fact that Dr. Lamont's report lacked specific IQ scores does not, as defendant appears to suggest (Defendant's Motion at 4), make the psychologist's opinions less probative.  For example, several circuits have held that valid IQ tests create a rebuttable presumption of a fairly constant IQ throughout a claimant's life.  See Hodges v. Barnhart, 276 F.3d 1265, 1268 (11th Cir. 2001) (holding that "absent evidence of sudden trauma that can cause retardation, the IQ tests create a rebuttable presumption of a fairly constant IQ

9

throughout [a claimant's] life"); see also Muncy v. Apfel, 247 F.3d 728, 734 (8th Cir. 2001) ("[A] person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning."); Luckey v. United States Department of Health & Human Services, 890 F.2d 666, 668 (4th Cir. 1989) ("the absence of an IQ test during the developmental years does not preclude a finding of mental retardation predating age 22 [for purposes of Listing 12.05(C)]; "[I]n the absence of any evidence of a change in a claimant's intelligence functioning, it must be assumed that the claimant's IQ had remained relatively constant [throughout claimant's life]."); Guzman v. Bowen, 801 F.2d 273, 275 (7th Cir. 1986) (holding that a claimant's IQ relates back and does not just reflect a new occurrence). Here, Dr. Lamont's findings corroborate the valid IQ scores documented in the 2012 Report, and thus further support an inference that plaintiff's IQ had also been deficient before the age of 22.

Third, there is evidence that plaintiff had another mental impairment which imposed an additional and significant work-related limitation of function – specifically, plaintiff's depression which the ALJ found to be a severe impairment at step two. (AR 21).

Finally, the Court cannot find the ALJ's errors to be harmless. Specifically, if – as the evidence plausibly suggests – plaintiff's borderline intellectual functioning met Listing 12.05(C) and met the 12 month duration requirement, the ALJ would have been required to find plaintiff disabled at step three without proceeding any further with the sequential evaluation process.

Accordingly, the case must be remanded for further consideration and clarification of plaintiff's mental impairments at step three.

///
///
///
///

## V. CONCLUSION[4]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[5]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: March 28, 2017

                                                 /s/
                              Honorable Jacqueline Chooljian
                              UNITED STATES MAGISTRATE JUDGE

---

[4] The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision except insofar as to determine that a reversal and remand for immediate payment of benefits based thereon would not be appropriate.

[5] When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted). Remand is proper where, as here, "additional proceedings can remedy defects in the original administrative proceeding. . . ." Garrison v. Colvin, 759 F.3d 995, 1019 (9th Cir. 2014) (citation and internal quotation marks omitted).